## CLARKE *et al. v.* CITY OF ATLANTA *et al.*

ATKINSON, J. Section 1(a) of the act approved August 19, 1919 (Acts 1919, p. 821), amending the charter of the City of Atlanta, authorized the mayor and general council to pave or repave the streets and assess the cost thereof upon abutting-property owners thereof; "provided, that any street-railway company having tracks on any street or public place, or portion thereof paved, repaved, or otherwise improved, under this amendment, shall be required to pay the whole cost of paving, repaving, or otherwise improving the street, . . for the full width of sixteen (16) feet of such pavement where they have two tracks thereon and eleven feet where they have one track thereon, and for the full distance that its track or tracks extend on the street . . so paved, repaved, or otherwise improved." Several property owners adjacent to South Moreland Avenue between Flat Shoals and Ormewood Avenues filed a petition with the mayor and general council of the City of Atlanta, for the pavement of said portion of said street. After filing of the petition the mayor and general council, on June 1, 1925, adopted an ordinance which provided that the designated portion of the street "be paved . . under the provisions of an act amending the charter of the City of Atlanta, passed at the session of the General Assembly held in 1919, . . and as provided by the other ordinances and charter provisions of the City of Atlanta governing such pavements, where necessary to carry into effect the amendment of 1919 aforesaid." Section 4 of the ordinance provided: "That after the cost of said work shall have been ascertained, the cost of paving between the tracks and along the tracks of the Georgia Railway & Power Company at all points on said street where said railroad company has double tracks for a width of sixteen feet, and, where said railway company has single tracks, for a width of eleven feet, and for the full distance of the tracks thereon, shall be assessed against said company and its property; and the assessments against said street-railway company shall be deducted from the whole cost of paving between the points above named, and the balance of the expense for the paving of said street shall be paid from and assessed against the property abutting on said street so paved, and the persons owning same, according to frontage pro rata, one half from the owners of property on one side of the street, and one half from the owners of property on the other side of the street." On July 15, 1925, the City of Atlanta entered into a contract under authority

---

Injunctions, 32 C. J. p. 55, n. 19; p. 265, n. 59.

Municipal Corporations, 28 Cyc. p. 375, n. 59; p. 1111, n. 9 New; p. 1134, n. 40; p. 1151, n. 17; p. 1154, n. 55; p. 1155, n. 66; p. 1173, n. 3, 6; p. 1185, n. 21.

of the above charter provision and ordinance, whereby a six-inch concrete pavement should cost $1.97 a square yard and additional concrete used around and under the car-tracks should cost $12.75 a cubic yard. After the paving had been completed, an ordinance was passed by the general council of the City of Atlanta, approved by the mayor on January 6, 1926, assessing the cost as follows: "Georgia Railway & Power Company, $16,964.60. Owners of property abutting thereon, $40,185.54." The assessment was arrived at by adding the cost of the pavement and the cost of additional concrete placed in the sixteen feet occupied by a double street-car track as one project, and then dividing the entire cost thus arrived at by the total number of square yards in the street, thereby requiring abutting-property owners to pay for part of the additional concrete. On January 28, 1926, certain property owners, who had petitioned the mayor and general council to pave the street, brought suit to enjoin the above-mentioned assessment, on the ground that it did not follow the charter or the ordinance authorizing the pavement. The trial judge denied their application for injunction, and they excepted. *Held:*

1. The authority as conferred by subparagraph (a) of section 1 of the act approved August 19, 1919 (Acts 1919, p. 821), amending the charter of the City of Atlanta, to pave streets "and assess the cost thereof upon abutting-property owners . . ; provided, that any street-railway company having tracks on any street . . paved . . shall be required to pay the whole cost of paving . . for the full width of sixteen (16) feet of such pavement where they have two tracks thereon, and eleven feet where they have one track thereon, and for the full distance that its track or tracks extend on the street," contemplates separate assessment against the street-railway company for the whole cost of paving the particular portions of the street specified to be assessed against the street-railway company, leaving the cost of paving the balance of the street to be assessed separately against the abutting-property owners.

2. Where in paving a given street on which tracks of a street-railway company are located the city requires extra concrete work as a foundation in the portion of the street occupied by the street-railway tracks, such extra concrete work must be regarded as a part of the pavement to be assessed against the street-railway company.

3. An ordinance was passed authorizing pavement of a particular street on which was located the tracks of a street-railway company. The ordinance specified the particular portions of the street to be paved at the cost of the street-railway company in accordance with the provisions of the act amending the charter of the city, and required extra concrete construction under the portion of the street occupied by the street-railway tracks. After the pavement had been completed, an ordinance was passed assessing the whole cost of the pavement of the entire street as one project, so that the entire cost would be apportioned against the street-railway company and the abutting-property owners in a manner that would cause the abutting-property owners to be assessed for a portion of the cost of the extra concrete work under the tracks of the street-railway company. *Held,* that this ordinance and the assessment thereunder was void in so far as it sought to impose upon the property owners payment for any part of the extra concrete work under the street-railway tracks.

4. The petitioners had the right to assume that the pavement would be constructed in accordance with the charter and ordinance of June 1, 1925, authorizing the pavement; and the facts that they applied to have the street paved, that they could see the pavement in front of their respective properties as it was constructed, that they were notified by publication of all the proceedings leading up to the contract, and were offered an opportunity to object to the contract before it was awarded, did not estop them from insisting that the assessment of the cost of the improvement as made by the city was illegal because it was not in accordance with the amendment to the charter and the ordinance authorizing the pavement of this particular street.

5. At the time of making the contract for the pavement there was in effect a general ordinance dated April 3, 1922, which provided: "Whenever an ordinance shall be passed by the Mayor and General Council providing for the pavement of a street or portion of street having thereon the following pavements, to wit: asphalt, concrete, granite blocks or cubes, vitrified brick, wood block, or similar pavement of a permanent character, and a street-railway company has tracks thereon, the City will make such excavations as might be necessary for the foundation, the entire width of the street to be paved, and the street-railway company having tracks thereon shall make such additional excavations as the foundation under its tracks may require. The concrete for the foundation in and under the track or tracks will be constructed at the same time as the foundation for the entire paving is constructed, and will be considered part of the foundation for the entire street, and such foundation in and under the track or tracks will be included in the expense of the estimated expense of the paving project and assessed by the City in the manner provided by ordinances and charter thereof." *Held*, that this general ordinance is opposed to the provisions of the amendment to the charter referred to in the first division, and is also in conflict with the subsequent ordinance of June 1, 1925, providing for the pavement and assessment of the cost thereof on this particular street; and said ordinance is ineffectual to vary the requirements of the charter and the special ordinance upon the question as to the assessment of the cost of paving.

6. "Where there is a mass attack by divers owners of abutting property upon the legality of an assessment for street paving, the remedy by illegality is not as adequate and complete as the remedy by injunction. In such a case, to prevent a multiplicity of suits, equity will interfere by injunction." *City of Camilla* v. *Cochran*, 160 *Ga.* 424 (128 S. E. 194).

(*a*) In the facts of this case the trial judge was not authorized to deny the injunction on the ground that the plaintiffs had an adequate remedy at law.

(*b*) The case is not controlled by the decision in *Regenstein* v. *Atlanta*, 98 *Ga.* 167 (2) (25 S. E. 428). The decision in that case did not refer to the principle that equity will take jurisdiction to avoid a multiplicity of actions. That case was distinguished in *Sanders* v. *Gainesville*, 141 *Ga.* 441 (81 S. E. 215), which was followed in *Wilkins* v. *Savannah*, 152 *Ga.* 638 (111 S. E. 42).

*Judgment reversed. All the Justices concur, except Gilbert, J., who dissents.*

No. 5464. JANUARY 11, 1927.

Petition for injunction. Before Judge Humphries. Fulton superior court. April 12, 1926.

*Hendrix & Buchanan,* for plaintiffs.

*J. L. Mayson, C. S. Winn, Colquitt & Conyers,* and *Candler, Thomson & Hirsch,* for defendants.